Argued May 2, affirmed August 2, 1973

CHASE, *Respondent, v.* HANSEN, *Appellant.*

512 P2d 997

*Walter D. Nunley,* Medford, argued the cause and filed briefs for appellant.

*William V. Deatherage,* Medford, argued the cause for respondent. With him on the brief were Frohnmayer & Deatherage, Medford.

HOLMAN, J.

This is an action by an attorney to recover fees for services rendered to the defendant and others arising primarily out of representation before the Federal Communications Commission. Defendant appeals from a judgment for plaintiff pursuant to a jury verdict.

Plaintiff sought recovery under the theories of express contract, account stated, and *quantum meruit.*

McAllister and Bryson, JJ., did not participate in the decision of this case.

Defendant answered with a general denial and the affirmative defense that the fees were the obligations of others and the statute of frauds therefore applied. The case was consolidated for trial with an action by plaintiff for the recovery of fees from W. H. Hansen, the father of the present defendant. In most instances the services which generated the claim in each case were the same. A judgment was also secured against the father, but it was not appealed.

Defendant's father had interests in various radio stations and in applications for permission to operate radio stations in southern Oregon and northern California. He had been represented for years by plaintiff, who specialized in and practiced communication law in Washington, D. C. The father came under investigation in the late 1960's because of alleged misrepresentations to the Federal Communications Commission and violation of its regulations. As a result, the father's applications for and his interests in the radio stations became jeopardized.

Defendant was the record owner of Station KCNO in Alturas, California, and his permit to operate that station also became jeopardized because the Commission claimed his father to be the actual owner of that station. KCNO was the most valuable of all the properties because it was the only station which was in actual and profitable operation. The principal bases for questioning the defendant's actual ownership of KCNO were (1) defendant's father furnished the money for the purchase of the station and (2) he operated it and took all the profits. The defendant did not live in Alturas, the location of the station, but in Medford, Oregon, where he taught school.

At the conclusion of the Commission's investi-

gations, formal charges were filed against both father and son and also against the father and other shareholders of Medford Broadcasters, Inc., one of the stations in which defendant's father had an interest. A joint hearing was ordered in Medford and Alturas on all matters of interest to defendant's father as well as on defendant's permit to operate KCNO. When it was learned that KCNO and defendant would be parties to the hearing, it was decided that plaintiff should represent defendant as well as most of the other parties to the proceeding. Most of the fees and expenses in question arose out of preparation for and the trial and appeal of these hearings. The original hearing resulted in a refusal to renew the license to operate KCNO.

The primary issue in the case was the nature of the fee arrangement. Plaintiff contended there was an agreement that he receive his actual expenses and $50 per hour for his time and that all parties to the hearing whom he represented would be responsible for his entire fee because of the difficulty in apportioning his charges. Defendant contended the agreement provided plaintiff was to receive a percentage of whatever interest he was successful in salvaging or acquiring with the exception of KCNO. Defendant and his father claimed it was understood that defendant and KCNO had no responsibility for any fees whatsoever because it was primarily the alleged transgressions of his father which had caused defendant to have problems with the relicensing of KCNO.

The first assignments of error pertain to the admission of testimony that KCNO was worth $150,-000, had annual earnings of as high as $34,000, and that defendant's father received the income therefrom.

Defendant claims that, in the absence of a request for punitive damages, evidence which disclosed the wealth and financial standing of defendant was irrelevant and prejudicial. He also claims that evidence of the father's receipt of the income from the station would indicate that defendant was merely a nominal owner for his father and would tend to cause the jury to return a verdict against defendant for his father's debts.

■ The testimony was admissible for other reasons and, therefore, no error was committed because of its introduction. The value of the station and its income were relevant to plaintiff's *quantum meruit* cause of action as evidence tending to prove the reasonable value of plaintiff's services. Such information also throws light upon the likelihood that plaintiff would do work concerning the conservation of such an asset but look elsewhere for his expenses and fees.

■ The testimony that defendant's father received the entire income from KCNO would tend to show that he had control of the station and thus had authority to represent his son in matters pertaining thereto. Most of the negotiations with plaintiff were carried on by defendant's father. Also, the testimony showed that defendant's father had a personal financial reason for testifying that the arrangement for fees with plaintiff excluded any responsibility on the part of either KCNO or the person in whose name it stood.

■ The defendant also contends that the trial court erred in failing to permit him to testify whether he had any income other than that which he received from teaching school. Defendant had already testified he received no income from KCNO. Whether or not defendant had income unconnected with the assets concerned in this litigation was irrelevant.

■ Defendant next contends that the trial court erred in failing to withdraw from the jury's consideration plaintiff's cause of action on an account stated. Defendant bases his contention on the absence of any evidence of an account ever having been rendered to defendant. Defendant's position is not well taken because there was evidence that, by prearrangement of the parties, the total charges due from everyone would be lumped and the statement sent to defendant's father. In addition, there was ample proof that defendant's father was authorized by defendant to be in complete charge of KCNO and, therefore, had authority to conduct all of its business. Under such circumstances, defendant's father would be his agent for the conduct of the business of KCNO, and a statement sent to defendant's father for charges due from KCNO would be the equivalent of one sent to defendant.

■ Defendant next contends that the court erred in giving the following instruction:

"I instruct you that an agreement to answer for the debt, default or miscarriage of another is void unless it, or some note or memorandum thereof, expressing the consideration, is in writing and subscribed by the party to be charged, or by his lawfully authorized agent. If, however, the person who agrees to pay the debt of another obtains some benefit from such an agreement and does not become a mere guarantor for another's debt, then a promise made by such person is sufficient and valid even though not in writing."

The exception to the instruction was as follows:

"* * * the language of that instruction implies that if Robert W. Hansen employed the plaintiff to perform services for him, * * * that because of the benefit he would receive· in that

respect that this would also render him liable for W. H. Hansen's bills * * *."

The implication which defendant contends is apparent in the instruction does not exist. Defendant's exception was not sufficiently broad to cover other claimed defects in the instruction.

■ Defendant charges that the trial court erred in failing to give the following instructions:

"Contingent fee contracts between attorney and client are recognized by the law as valid, provided that the fee is reasonable. Such contracts are as much for the benefit of the client as the attorney, especially when the client has a meritorious cause of action but no means to pay for legal services unless he can make a contract for a contingent fee."

"I instruct you that the Oregon State Bar Schedule of Minimum Fees and Charges provides that a contingent fee or percentage fee in the following percentages is proper, if agreed to by the client:

"Settled without action 25%
Settled after action but before trial 33⅓%
During or after trial 40%"

Defendant's witnesses testified to an arrangement for a contingent fee contract. Plaintiff testified there was no such agreement and that it would have been unethical for him to make one. Since the practice in question was before the Federal Communications Commission, it is not covered by the rules of practice of the Oregon State Bar. Insofar as the records show, the trial court was not furnished any authority indicating that the requested instructions represented also the appropriate rules of practice before the Commission. We would not expect the trial judge to know or to have ready access to these rules. Therefore, in the absence

of demonstrated authority indicating that the instructions were proper, the trial judge was correct in not giving them. Such a refusal would be reasonable as there are many reasons why contingent fee contracts might be considered improper practice before the Commission. For instance, such contracts might tend to give successful lawyers a beneficial interest in radio stations and thus defeat the strict licensing provisions of the federal law.

The defendant contends the trial judge erred in failing to give the following instructions concerning changes in original contracts for fees between attorneys and clients:

"An agreement may be made by a client with his attorney, after the latter had been employed, by which the original employment contract is changed or varied to provide greater compensation to the attorney, or changing the basis upon which the attorney is to be compensated. However, in such circumstances, the lawyer has the burden of showing that he used no undue influence, made no misrepresentations and that he made a full disclosure of all information necessary to a fair decision by the client."

"Contracts made between attorney and client during the existence of that relationship, are to be construed most strongly against the attorney."

"An attorney cannot exact an increased compensation from his client, or modify or vary his original contract of employment under a threat to withdraw from the case."

Both the defendant and his father testified that at no time did defendant or anyone upon his behalf agree to pay plaintiff for his services to defendant and KCNO arising out of the hearings. They testified that the agreement to pay plaintiff for his services on

behalf of defendant and KCNO was made between defendant's father and plaintiff and was to the effect that plaintiff was to represent defendant and KCNO for a contingent interest in the stations in which defendant's father had an interest. There is no evidence by either defendant or his father that the agreement that defendant was not responsible for any fees was ever changed. Defendant's father wrote a letter to plaintiff to the effect that "* * * win or lose, I will see that you get the money * * *" and he testified that he did this because plaintiff was pressuring him and threatening to withdraw his representation. However, correspondence of defendant's father makes clear that the father was not promising upon behalf of defendant that defendant would personally pay or had any obligation to pay plaintiff.

■ Plaintiff testified that all those persons whom he represented in the hearing agreed to be jointly and severally liable to him for his expenses and fees arising out of the litigation, and he made no claim that this agreement was subsequently changed. Therefore, there was no issue in this case of a possible change in the fee arrangement. The real dispute, insofar as defendant is concerned, was the nature of the original agreement. No error was committed when the trial court refused to give the instructions in question.

■ Defendant's remaining contention is that the trial court erred in failing to admit a number of cancelled checks representing payments upon expenses by defendant's father to plaintiff. The records of charges and payments introduced by plaintiff as part of his case in chief did not show the payments represented by the checks. Therefore, the checks were offered to impeach plaintiff's records and his testimony con-

cerning them. It is not entirely clear whether plaintiff meant to testify that no payments at all were received or whether he meant to say that the payments represented by the checks were received but credited on old services rendered to defendant's father in other matters which were not relevant to plaintiff's claim against defendant. The jury was not required to believe that plaintiff credited the checks upon old accounts, if that was the intent of plaintiff's testimony. Therefore, in either event, the checks were admissible and the trial court erred in keeping them out. However, considering the testimony as a whole, we do not believe the omission had anything to do with the outcome of the case. There was hardly a subject on which testimony was taken upon which plaintiff and defendant's father agreed. They were the two principal witnesses. The issue upon which the checks were admissible was a minor one and of little consequence as compared with the principal issue upon which the case was tried, that is, the nature of the agreement between the parties.

The judgment of the trial court is affirmed.